UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| TERI J. McDERMOTT, *et al.*, | ) | Case No. 1: 98 CV 515 |
| | ) | |
| Plaintiffs | ) | |
| | ) | |
| v. | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| ADVANSTAR COMMUNICATIONS, INC. | ) | |
| | ) | |
| Defendant | ) | ORDER |

Now pending before the court are Plaintiffs' Motion to Enforce the Settlement Agreement (ECF No. 407, filed under seal) and Plaintiffs' Motion to Reinstate the Case. (ECF No. 405.) The court held an evidentiary hearing on these motions on April 10, 2007. For the reasons stated below, Plaintiff's Motion to Enforce the Settlement Agreement is denied and Plaintiffs' Motion to Reinstate the Case is granted.

## I. FACTS

### A. The Lawsuit

Plaintiffs Ronald G. Boisvert, John Karapelou, Teri J. McDermott, Todd A. Buck, Diane L. Nelson, William B. Westwood, Jane Hurd, Christopher Wikoff, Edmond Alexander, Cynthia Turner,

William Andrews, Joan Beck, Charles A. Boyter, Brian Evans, William P. Hamilton, Floyd E. Hosmer and Betsy A. Palay (collectively "Plaintiffs") brought this action against Advanstar Communications, Inc. ("Advanstar" or "Defendant") alleging direct copyright infringement, contributory copyright infringement, vicarious copyright infringement, and breach of contract. (*See* Order Granting in Part and Denying in Part Defendant's Motions for Summary Judgment at 1, ECF No. 290.) The court granted Defendant's summary judgment motion on all Plaintiffs' claims except Count One, direct copyright infringement, and Count Six, Breach of Contract. (*Id.* at 31.)

### B. The Parties' Settlement Negotiations

*1. July 23, 2006 - July 25, 2006*

Trial was to commence in this case on Monday, July 24, 2006. The day before trial, the parties engaged in settlement discussions. Plaintiffs' lead counsel, William T. McGrath ("McGrath") conveyed a settlement demand of $3 million to Defendant Advanstar's ("Defendant" or "Advanstar") lead counsel, Terence J. Clark ("Clark"). Clark indicated that Defendant was not willing to pay that much. Shortly after their conversation, in what McGrath describes as "the hope that the parties would eventually reach agreement on a dollar amount for a settlement," (McGrath Decl. ¶ 3) McGrath sent Clark the following e-mail with the subject heading "Non-monetary terms":

> Terry--
>
> I mentioned this morning that the plaintiffs would want certain terms in any settlement. Below, in general concepts, are those terms. As you can see, they shouldn't raise any serious problems.
>
> It is explicitly understood that the settlement fee confers a retroactive license for Advanstar's past usage only. Advanstar will not in the future republish the illustrations in print, electronic or any other media. Advanstar (and any subsidiaries, etc.) will not license or authorize republication by any third-party (e.g., online

>> databases, foreign editors, etc.), unless permission is obtained and terms are mutually agreed in advance for usage and licensing fees.
>
> Plaintiffs will release Advanstar from any past or future use by any of Advanstar's former licensees. Adv. represents that it has no current foreign licensees for MM or Geriatrics.
>
> Adv. will notify all past [and present, if any] foreign licensees in writing that any further publication of illustrations, whether in print, electronic or any other media, requires direct permission from the illustrator and mutually-agreed terms in advance for usage and licensing fees. Contact information for each illustrator is to be included in the foreign edition notifications.
>
> A mutually-approved press release will be issued to the effect that the medical illustrators own and control the copyrights in their works, and that a settlement agreement has been reached.
>
> Bill

(Pls.' Mot. to Enforce Settlement, McGrath Decl., Ex. A.)

McGrath stated that Clark "did not respond to this e-mail message concerning the non-monetary terms of any settlement and did not express any disagreement with those terms when the parties reached agreement on the monetary terms the next day." (*Id.,* McGrath Decl. ¶ 4.) Conversely, Clark stated that, after conferring with Advanstar, he telephoned McGrath as a courtesy to confirm that the $3 million settlement offer and "the terms set forth in the email – particularly the requested 'retroactive license fee' and the manner in which all the other terms in his email were expressed – had previously been rejected by Advanstar and there was no sense re-addressing them on the eve of trial unless the parties could agree on a number." (Def.'s Opp'n to Pls.' Mot. to Enforce Settlement, Clark Decl. ¶ 4.) Clark then stated that "all settlement discussions at that point were off the table." (*Id.*)

The parties spent Monday, July 24, 2006, in chambers with the court reviewing Motions *in Limine,* and the court made rulings which Defendant believed were favorable to their litigation

position.  (*Id.,* Clark Decl. ¶ 5.)  Afterward, Clark told McGrath to contact him that evening if Plaintiffs wished to renew settlement discussions.

Clark and McGrath engaged in settlement discussions that evening.  The parties dispute the material, essential terms of that evening's settlement discussions. Specifically, Plaintiffs contend that, consistent with the July 23 e-mail, the essential terms to which the parties agreed upon on the night of July 24 were:

> (a) Advanstar will pay Plaintiffs $2 million.
>
> (b) Plaintiffs will release Advanstar from liability.
>
> (c) Plaintiffs will release Advanstar from liability for all of Advanstar's past acts of infringement of Plaintiffs illustrations, whether known or unknown, and will dismiss the lawsuit.
>
> (d) Advanstar will notify its foreign licensees that any future use by them of Plaintiffs' illustrations would require permission from the illustrator.
>
> (e) The settlement is a resolution of disputed claims and neither the settlement payment nor any fraction thereof will be used or considered as a valuation of any reuse or claim.
>
> (f) The terms of the settlement will be kept confidential.

(Pls.' Mot. to Enforce Settlement, McGrath Decl. ¶ 6.)  Conversely, Clark claims that the terms contained in McGrath's e-mail were not raised the night of July 24 in any of the draft term sheets, nor at any time prior to Plaintiffs' Motion to Enforce Settlement on October 17, 2007.  (Tr. of Proceedings on Pls.' Motion to Enforce Settlement and Mot. to Reinstate the Case, April 10, 2007, ("April 10, 2007 Tr.") at 107.)  Instead, Clark claims that among the material terms which the parties discussed on July 24 are:

> (a) So that the Plaintiffs could not immediately [start] filing additional lawsuits against Advanstar after any written settlement agreement was executed, there must be a 90 day "Set-Up Period" to establish and implement mechanisms with respect to

-4-

>  Plaintiffs' medical illustrations that would resolve any potential future claims without litigation.
>
> (b) The parties will have to agree to such mechanisms so that the Plaintiffs cannot again file suit against Advanstar regarding their medical illustrations with respect to any print, online, or other media use.
>
> (c) Suggested mechanisms included "notice and take-down" procedures in the event of any found reuses, potential "default and cure" provisions, and ways to identify potential print, online and other media reuses so that they could be addressed.
>
> (d) The requirement that the parties ensure that they never have litigation again must include licensors, licensees, vendors, and other parties dealing with Advanstar because such parties might, if sued by Plaintiffs, just turn around and seek to involve Advanstar in the litigation, thus thwarting the purpose of these mechanisms.
>
> (e) Plaintiffs would thus also have to agree that they could not sue Advanstar, and Advanstar could not be sued, when Advanstar had taken whatever steps would be agreed to implement the prevention of future reuse of Plaintiffs' medical illustrations.
>
> (f) Any settlement would obviously have to include any and all claims of any sort against Advanstar regarding medical illustrations and otherwise, whether known or unknown, and include in the releases all of the third parties connected with Advanstar.
>
> (g) Because Advanstar wanted to be certain that it would not have litigation again with the Plaintiffs, the Plaintiffs would have to indicate that they were not holding anything back, there were no other claims which could be brought against Advanstar and that mechanisms would be developed to address any such potential claims.

(Def.'s Opp'n to Mot. to Enforce Settlement, Clark Decl. ¶ 7.)  Clark stated that McGrath indicated that McGrath did not believe that Plaintiffs would have any problems with these terms.  (April 10, 2007 Tr. at 111.)  Moreover, Clark stated that he told McGrath that Advanstar did not believe damages would approach $2 million, and that Defendant was only willing to pay such an amount if the above material terms and conditions could be satisfied so that future proceedings on claims and the expense of litigation could be avoided.  (Def.'s Opp'n to Mot. to Enforce Settlement, Clark Decl. ¶ 8.)

The next day, the parties told the court that they had reached a settlement in terms of a monetary amount. However, regarding the non-monetary terms of the settlement, McGrath indicated that:

> The parties have exchanged various non-monetary terms. *We think we will be able to achieve language and agreement on those non-monetary terms, although that's not yet definitive.* Our plan is to work today to try to achieve in writing a definitive agreement. That will be our first (sic) this morning.

(Tr. of Proceedings Had (sic) Before the Honorable Solomon Oliver, Judge of Said Court, on Monday, July 24, 2006 and Tuesday, July 25, 2006 ("July 25, 2006 Tr.") at 231 (emphasis added).

Clark then added:

> And to my knowledge in weeks (sic) with reaching this agreement, *which needs to be embodied in writing*, Mr. McGrath, on behalf of all the Plaintiffs, has indicated Number 1, all of them are settling; Number 2, that the terms I indicated to him are, you know, things that he doesn't conceive being a problem. And he has indicated to me all the things that are of interest to the Plaintiffs so that I think there's nothing that you haven't communicated to me that's of interest to Plaintiffs, right; which means all we have to do is to reduce the concepts to writing?

(*Id.* at 231-32) (emphasis added).

The parties then adjourned to discuss the general framework for a settlement agreement. McGrath states that Advanstar then raised for the first time an entirely new topic, *i.e.,* that it wanted a notice and cure provision in the event Advanstar made any inadvertent future use of materials (Pls.' Mot. to Enforce, McGrath Decl. ¶ 13). However, Clark maintains that the parties had discussed this term the previous evening. (Def.'s Opp'n to Pls.' Mot. to Enforce, Clark Decl. ¶ 12.)

The parties agreed to draft term sheets that would form the basis of an eventual settlement agreement. Later that afternoon, Clark sent a draft term sheet to McGrath. (Pls.' Mot. to Enforce, McGrath Decl. ¶ 16.) The first two bullet points of Defendant's draft term sheet were:

-6-

> (1) [w]ithin five business days of Advanstar's receipt of a long form settlement agreement (the "Settlement Agreement") executed by all Plaintiffs and Advanstar, Advanstar shall pay to Plaintiffs ... the sum of two million dollars; (2) Within five business days of this payment, the Parties shall file the agreed stipulation for dismissal of the Lawsuit with prejudice which will be attached to the settlement agreement.

(Pls.' Mot. to Enforce Settlement, McGrath Decl. Ex. B.) Later that day, Plaintiff sent Defendant its proposed revisions to Defendant's draft term sheet. (*Id.,* McGrath Decl. ¶ 17.) Plaintiff included the following provision: "Definitive agreement must be executed on or before August 1, 2006." (Pls.' Mot. to Enforce Settlement, McGrath Decl., Ex. C.) McGrath states that the following morning (July 25, 2006), without prior notice, Clark sent McGrath an e-mail indicating that Clark and his team were departing Cleveland that day. (*Id.,* McGrath Decl. ¶ 17.) Clark maintains that he e-mailed McGrath the evening of July 25, 2006, and told McGrath that "to save time going back and forth on the Term Sheets, we'll draft the full agreement with these provisions and hope to get it to you by Thursday (tomorrow is a travel day)." (Def.'s Opp'n to Pls.' Mot. to Enforce Settlement, Clark Decl. ¶ 17.)

*2. July 26, 2006 - October 17, 2006*

Counsel returned to their respective home offices and on July 28, 2006, Clark sent McGrath a draft Settlement Agreement. Thereafter, the parties continued to negotiate the terms throughout the month of August, 2006, but the parties could not reach agreement. Plaintiffs claim the parties could not reach agreement because Defendants insisted on including terms not addressed in the parties' discussions on July 24, 2006, or July 25, 2006 (Pls.' Mot. to Enforce Settlement, McGrath Decl. ¶¶ 22, 23), while Defendant maintains that these terms had previously been raised.

**C. Motions for Extension of Time to Complete Settlement Negotiation**

On August 25, 2006, Plaintiffs filed a Joint Motion for Extension of Time Until September 29, 2006 to Complete Settlement Negotiations. (ECF No. 401.) In that motion, Plaintiffs stated that the parties reported to the court on July 25, 2006, that they "had reached a settlement in principle." (*Id.* at ¶ 1.) The Plaintiffs further stated: "[t]he parties began work on the terms of that agreement that morning. Since that time, the parties have made substantial progress and have resolved many of the issues in dispute. Certain substantial issues remain, however, which must be settled before the Settlement Agreement can be finalized." (*Id.* at ¶ 2.) (emphasis added). Plaintiffs stated that, "the Parties estimate that it will take an additional 30 days to reach agreement on the remaining issues and execute a Settlement Agreement." (*Id.* at ¶ 4.) Finally, the motion referenced the court's August 1, 2006 order (ECF No. 399) which directed that the parties finalize their settlement agreement and submit a dismissal order to the court on or before August 30, 2006. (*Id.* ¶ 3.)

The court subsequently issued a Judgment Entry order on August 31, 2006 (ECF No. 403), stating that:

> The parties have settled the within action and will be submitting a dismissal entry to the court by September 29, 2006. Therefore it is not necessary that the action remain upon the calendar of the court.
>
> IT IS ORDERED that this action is hereby closed. The court retains jurisdiction tovacate this Order to reopen the action upon cause shown that settlement has not been completed and further litigation is necessary.

The parties continued to engage in discussion regarding the non-monetary terms of the settlement and exchanged suggested revisions to the draft Settlement Agreement throughout September. On September 28, 2006, Plaintiffs filed their Motion for Extension of Time to Complete Settlement Negotiations or, in the Alternative, to Reopen the Action. (ECF No. 404.) In that motion,

Plaintiffs stated that: "Despite the parties' best efforts, the written Settlement Agreement has not yet been finalized or executed by the parties." (*Id.* at 5.) Plaintiffs also stated that: "It is not yet clear that further litigation is necessary, as the parties continue to work in good faith toward that end. With a short extension to October 16, 2006, Plaintiffs will know whether the parties will be able to finalize settlement or whether further litigation is actually necessary." (*Id.* ¶ 6.) Finally, Plaintiff's motion concluded with a request for the extension to "finalize the settlement and enter a dismissal order with the court." (*Id.*)

### D. Plaintiff's Motion to Reinstate the Case and Motion to Enforce Settlement

Despite further efforts, the parties still could not reach agreement on non-monetary settlement terms. Therefore, Plaintiffs filed their Motion to Reinstate the Case (ECF No. 405) on October 16, 2006, because "the written Settlement Agreement has not been finalized or executed." Plaintiffs stated that the reason for this failure was Defendant's "unilateral insistence on inclusion of terms that were not part of the settlement of this action" and alleged refusal to "withdraw its demands for these additional terms." (*Id.* ¶¶ 8,9.) The next day, Plaintiffs filed its Motion to Enforce Settlement Agreement under seal. (ECF No. 407.) In that motion, Plaintiffs argue that the court "should enforce the agreement reached by the parties on all essential terms on July 24, 2006," and that "the fact that the settlement was not successfully reduced to writing after it was announced by the parties does not mean that no settlement was reached." (Pls.' Mem. in Support of its Mot. to Enforce Settlement at 1, ECF No. 413, filed manually.)

In Defendant's Response to Plaintiffs' Motion to Reinstate (ECF No. 409), Defendant asserted that "Plaintiffs have repeatedly rejected all of the good faith efforts of Advanstar to resolve the major disputes which Plaintiffs in their September 28, 2006, Motion acknowledged as then still

-9-

existing on the remaining major issues." (*Id.* ¶ 3.) Furthermore, Defendant stated that, "in lieu of working with Advanstar to develop creative ways to resolve the major disputes between the parties, Plaintiffs elected to cut off settlement negotiations before a Settlement Agreement could be finalized and instead file their Motion to Reinstate the litigation." (*Id.* ¶ 7.) In opposing Plaintiffs' Motion to Enforce the Settlement Agreement, Defendant argues: (1) the parties did not reach an oral agreement on July 24, 2006, that the parties intended to be a binding agreement upon all parties; (2) it was a condition of the settlement that the Settlement Agreement must be in writing and executed by the parties; and, (3) the court lacks jurisdiction to enforce any Settlement Agreement because it never specifically reserved jurisdiction to do so as required by Supreme Court and Sixth Circuit authority. (*See generally* Def.'s Sur-Reply, ECF No. 411, filed manually.) The court subsequently conducted an evidentiary hearing on Plaintiff's Motion to Enforce Settlement and Motion to Enforce the case on April 10, 2007.

## II. LAW AND ANALYSIS

### A. Motion to Enforce Settlement

For the foregoing reasons, the court finds that the parties did not agree to be bound by a purported oral settlement agreement regarding all material non-monetary terms on July 24, 2006. As the court finds the parties did not reach a settlement agreement, the court need not address Defendant's argument that the court lacks jurisdiction to enforce the purported settlement agreement.

The Sixth Circuit has repeatedly held that a federal court may enforce agreements entered into in settlement of litigation pending before them, even if that agreement has not been reduced to writing, "so long as agreement has been reached on all material terms." *Michigan Reg'l Council of Carpenters v. New Century Bancorp,* 99 Fed App'x 15, 20 (6th Cir. 2004) (citing *Re/Max Int'l v.*

*Smythe, Cramer Co.,* 271 F.3d 633, 646 (6th Cir. 2001); *Brock v. Scheuner Corp.,* 841 F.2d 151, 154 (6th Cir. 1988)). "Ordinarily, an evidentiary hearing is required where facts material to an agreement are disputed," but a hearing is not required if the agreement is "clear and unambiguous and no issue of fact is present." *Michigan Reg'l Council of Carpenters,* 99 Fed App'x at 20 (citations omitted). Thus, "summary enforcement of a settlement agreement has been deemed appropriate where no substantial dispute exists regarding the entry into and terms of an agreement." *Id.* However, "summary proceedings may result in inequities when such a dispute exists." *Kukla v. Nat'l Distillers Prods. Co.,* 483 F.2d 619, 621 (1973).

In *Re/Max Int'l,* 271 F.3d at 646, the record showed that "all essential terms of the settlement agreement had been agreed upon in open court and all that remained was to sort out the non-material details and put the agreement in writing." Realty One, the defendant that claimed that the district court erred in enforcing the settlement agreement, "acknowledge[d] that there was a clear and unambiguous agreement, constituting a meeting of the minds on key terms." *Id.* Moreover, the court noted that the defendant's objective acts (*e.g.,* communicating its belief that an agreement had been reached in a newsletter to its employees, tendering a payment of over $3 million to the plaintiff, and withdrawing its adverse split letters) reflected the defendant's belief that it had reached a settlement agreement, though the defendant later disputed the court's enforcement of the settlement.

Similarly, the Sixth Circuit found that the parties reached a settlement agreement in *Michigan Regional Council of Carpenters,* 99 Fed. App'x at 22-23, because "the undisputed nature of the oral agreement, in itself, provided the district court with a sufficient basis to enforce the settlement agreement" without holding an evidentiary hearing. Moreover, the court stated that "even assuming that there was no valid oral settlement agreement in this case, there undoubtedly was a written

-11-

agreement that all of the parties eventually executed or otherwise adopted." *Id.* Like the defendant in *Re/Max,* the defendant in *Michigan Regional Council of Carpenters* also started to perform under the oral agreement by forwarding to its counsel a $25,000 settlement check and executing a written document (which embodied the terms of the oral agreement) prior to attempting to rescind that agreement.

Significantly, among the reasons that the Sixth Circuit affirmed the district court's enforcement of an oral settlement agreement in *Bosley v. 21 WFMJ Television, Inc.,* Nos. 06-3091, 06-3624, 06-3625, 06-3626, 06-3894, 06-3895, 2007 U.S. App. LEXIS 17396, at *13-14 (6th Cir. July 13, 2007), was that the parties' notice to the court "contained no hint that settlement was contingent on the negotiation of additional terms or ... the actual memorialization of the agreement terms in a written document," and that "the parties' operated as if their dispute had been resolved."

Conversely, the Sixth Circuit in *Therma-Scan, Inc., v. Thermoscan, Inc.,* 217 F.3d 414, 419-20 (6th Cir. 2000) reversed the district court's enforcement of the parties' purported settlement agreement because the parties did not reach agreement on a material term. Similarly, the district court in *Raytheon Aircraft Credit Corp. v. Henderson,* No. 01-1178-WEB, 2001 U.S. Dist. LEXIS 21433, at *5-7 (D. Kan. Dec. 7, 2001), held that the court could not enforce a settlement agreement where, although the parties might have reached an oral agreement regarding some of the material settlement terms, the parties dispute that they reached agreement regarding all of the material terms of the settlement agreement. Finally, the court in *Wang Labs. v. Applied Computer Sciences, Inc.,* 958 F.2d 355, 359-60 (Fed. Cir. 1992) reversed the district court's enforcement of a settlement agreement, finding that, among the reasons that the parties demonstrably did not reach a settlement

agreement was the fact that "on three separate occasions, their counsel jointly informed the court that settlement is not in final form and has not been executed."

Here, the court finds that Plaintiffs and Defendant did not enter into an oral settlement agreement on all material non-monetary terms on July 24, 2006. First, the July 25, 2006 transcript reveals that, though the parties told the court they had reached agreement regarding the monetary settlement amount, they explicitly told the court, unlike the defendants in *Bosley*, that they had not yet reached agreement on the non-monetary terms. For example, McGrath told the court that "we think that we will be able to achieve language *and agreement* on those non-monetary terms, *though that is not yet definitive*. Our plan is to work today to achieve in writing a *definitive agreement*." (July 25, 2006 Tr. at 231) (emphasis added). Unlike *Re/Max,* the material non-monetary terms of the purported settlement were never presented in open court, and unlike *Michigan Regional Council of Carpenters,* there was no subsequent written agreement that all of the parties eventually executed or otherwise adopted. Indeed, it is undisputed that no memorandum was ever prepared of the parties' discussion on July 24, 2006, and that the parties never reached agreement on any of the term sheets or draft settlement agreements. (April 10, 2007, Tr. at 89). Moreover, McGrath never told the court on July 25, 2006, that the parties had made a binding oral agreement the night before regarding non-monetary terms; and, indeed, Plaintiffs never advanced this argument throughout the months of negotiations until they filed their Motion to Enforce on October 17, 2006.

Secondly, the parties objectively demonstrated, based on the first two bullet points of the draft term sheet that the parties exchanged on July 25, 2006, that they did not intend to be bound by the purported oral agreement but instead required the parties to execute a long form settlement

-13-

agreement.[1] Significantly, unlike the defendants in *Re/Max* and *Michigan Regional Council of Carpenters,* whose performance of the terms of the settlement agreement demonstrated that they had reached a settlement agreement, Defendant did not begin to perform on the agreement here by, for example, paying Plaintiffs the $2 million settlement or filing an agreed stipulation for dismissal with the court. Finally, similar to the parties in *Wang,* Plaintiffs' multiple motions for extensions of time to "complete settlement negotiations" belie Plaintiffs' present claim that the parties entered into a binding oral agreement regarding all material non-monetary terms on July 24, 2006. Accordingly, for the above-stated reasons, the court cannot enforce that purported oral settlement agreement because the parties did not reach agreement on all non-monetary material terms.

### B. Motion to Reinstate the Case

The court finds that settlement has not been completed in this case and further litigation is necessary. Defendant does not oppose Plaintiffs' motion to reinstate the case; indeed, it states in its response to the motion that, as "Plaintiffs are moving for reinstatement based upon the facts that no settlement has been finalized and further litigation is necessary, Advanstar respectfully requests the Court to schedule the case for trial at a date convenient for the Court and all parties and witnesses..."

---

[1] As stated above, the first two bullet points of the Term Sheets were:

(1) "[w]ithin five business days of Advanstar's receipt of a long form settlement agreement (the "Settlement Agreement") executed by all Plaintiffs and Advanstar, Advanstar shall pay to Plaintiffs ... the sum of two million dollars; (2) Within five business days of this payment, the Parties shall file the agreed stipulation for dismissal of the Lawsuit with prejudice which will be attached to the settlement agreement."

(ECF No. 409). Therefore, pursuant to the August 31, 2006, Judgment Entry (ECF No. 403), the court now exercises its jurisdiction to vacate that Order and to reopen this action.

### III. CONCLUSION

For the reasons stated above, Plaintiffs' Motion to Enforce the Settlement Agreement (ECF No. 407, filed under seal) is denied. Plaintiff's Motion to Reinstate the Case (ECF No. 405) is granted and, as a result, the court vacates its August 31, 2006, Judgment Entry Order. (ECF No. 403.)

The court hereby refers the within case to Magistrate Judge Hemann to hold a settlement conference with the parties in mid to late January, 2008. She will schedule the conference.

IT IS SO ORDERED.

/S/ SOLOMON OLIVER, JR.
UNITED STATES DISTRICT JUDGE

December 12, 2007